UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SOPHEAP GARRISON,<br><br>                Plaintiff,<br>    v.<br><br>ALLSTATE INSURANCE COMPANY,<br>an Illinois Insurance corporation,<br><br>                Defendant. | CASE NO. C21-00624-DGE<br><br>ORDER GRANTING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT REGARDING NEGLIGENCE CLAIM |

## I.   INTRODUCTION

This matter comes before the Court on Defendant's Motion for Partial Summary Judgment and Dismissal of Negligence Claim. (Dkt. No. 91.) The Court has considered the pleadings filed in support of and opposition to the motion and the remainder of the record and hereby GRANTS Defendant's motion for the reasons discussed herein.

## II.   BACKGROUND

Plaintiff purchased from Defendant under-insured motorist coverage ("UIM"). (Dkt. No. 1-2 at 3.) On March 4, 2016, Plaintiff was involved in a motor vehicle collision with an alleged

1  under-insured motorist.  (*Id*.)  Five days later she informed Defendant of a possible claim. (Dkt.
2  No. 51-1 at 71.)
3      On May 3, 2017, Plaintiff filed a third-party action against the under-insured motorist.
4  (*Id*. at 75.)  On June 27, 2018, Plaintiff invited Defendant to intervene in the third-party action,
5  which it declined.  (*Id*. at 66.)  On December 20, 2018, Plaintiff settled her third-party claim.
6  (*Id*. at 62.)
7      On January 21, 2019, Defendant reached out to Plaintiff to inquire about the status of
8  Plaintiff's UIM demand.  (*Id*. at 60.)  Plaintiff then submitted her UIM demand on January 24,
9  2019.  (Dkt. No. 51-3 at 13–28.)  On February 22, 2019, Defendant spoke with Plaintiff's
10 counsel to discuss the UIM demand.  (Dkt. No. 51-1 at 59.)  Per the claim note memorializing
11 the conversation with Plaintiff's counsel, Defendant's claims adjuster discussed Plaintiff's
12 medical records and treatment history.  (*Id*.)  The claims adjuster informed Plaintiff's counsel
13 that "based on the information that has been presented, [Defendant] see[s] no additional value
14 from what [Plaintiff] collected on the underlying [third-party lawsuit] and so will await for the
15 [Plaintiff's] lawsuit."  (*Id*.)
16     Plaintiff has not identified evidence indicating Defendant disputed Plaintiff's special
17 damages (medical costs, wages or any other expenses) that were submitted in support of the
18 January 21, 2019 demand.  The only dispute appears to have been the dollar value of Plaintiff's
19 general damages and whether the general damages, when combined with the special damages,
20 exceeded the amount Plaintiff received from the underlying tortfeasor.
21     On April 9, 2019, Plaintiff filed a UIM breach of contract claim in state court against
22 Defendant.  (Dkt. No. 3-1 at 2–5.)  On June 5, 2019, Defendant filed its answer to the UIM
23 action.  (*Id*. at 25–28.)  Trial for the breach of contract claim was originally scheduled for April
24

ORDER GRANTING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT REGARDING NEGLIGENCE CLAIM - 2

6, 2020, and by stipulation the parties agreed to continue the trial. (*Id.* at 45–46.) Trial was rescheduled to June 8, 2020. (*Id*. at 42–43.) The trial date again was continued to November 2, 2020. (*Id.* at 49–56.) An additional continuance was stipulated and granted to April 19, 2021. (*Id*. 80–89.)

On January 22, 2021, two years after the January 2019 UIM demand, and approximately 21 months after Plaintiff filed its original lawsuit, Plaintiff submitted an "ER 408 Protected Settlement Communication" to Defendant and its attorney. (Dkt. No. 57-2 at 2.) This communication demanded payment of the UIM policy limits (which was the subject of the UIM lawsuit). (*Id*.) It also enclosed a January 21, 2021 report "authored by Dr. Joni Howard, PhD., following the clinical examination of [Plaintiff]." (*Id*.) Dr. Howard's report was "supplemental to the documents and other materials attached as exhibits to Plaintiff's demand of January 22, 2019, and is to be evaluated in conjunction therewith." (*Id*.) The January 22, 2021 communication further stated, "*This will be your final opportunity to settle this matter*. . . [.]" (*Id*.) Though not specifically identified by Plaintiff, Dr. Howard's report appears to be found at pages 58 through 86 of Docket Number 3-2.

On March 29, 2021, approximately 21 days before the scheduled trial date, Plaintiff moved to amend her complaint to include extracontractual claims, including breach of the Washington's Insurance Fair Claims Act, Breach of Duty of Good Faith, Breach of the Fiduciary Duty, Breach of the Washington Consumer Protection Act, and Negligence. (Dkt. No. 3-2 at 296–303.) On April 13, 2021, Plaintiff moved to voluntary dismiss her complaint without prejudice indicating she was not prepared for the April 19, 2021 trial. (Dkt. No. 3-3 at 258–261.) Eventually, leave to amend Plaintiff's complaint was granted and a new trial date was scheduled

ORDER GRANTING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT REGARDING NEGLIGENCE CLAIM - 3

for December 6, 2021.  (*Id*. at 334–335.)  Subsequently, the litigation was removed from state court to this Court on May 10, 2021.  (Dkt. No. 1.)

The Court dismissed all of Plaintiff's extracontractual claims except for the negligence claim on April 8, 2022.[1]  (Dkt. No. 70.)  Reconsideration of the dismissal of the extracontractual claims was denied on May 10, 2022.  (Dkt. No. 82.)

A pretrial conference was scheduled and held in this matter on May 13, 2022.  (Dkt. No. 90.)  The parties had not complied with the local rules and otherwise did not submit a proper proposed pretrial order prior to the pretrial conference.  (*Id*.)  In its motions in limine, Defendant also raised the validity of Plaintiff's negligence claim.  (Dkt. No. 75 at 23.)  Because the parties failed to discuss the trial exhibits, had not submitted a proper proposed pretrial order, and because there were questions regarding the validity of Plaintiff's negligence claim, the Court continued the trial to September 12, 2022 and ordered the parties to submit authority and argument on the validity of Plaintiff's negligence claim.  (Dkt. No. 90.)  New corresponding deadlines were also identified.  (*Id*.)

### III.   DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could

---

[1] The fiduciary duty claim also was not dismissed.  However, Plaintiff acknowledged the Breach of Fiduciary Duty Claim was no longer being pursued.  (Dkt. No. 87 at 2.)

ORDER GRANTING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT REGARDING NEGLIGENCE CLAIM - 4

find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

However, the nonmoving party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv., Inc. v. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987). The Court need not, and will not, "'scour the record in search of a genuine issue of triable fact.'" *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Washington Recognizes a Claim for Negligent Claims Handling, Which is Separate and Distinct From Bad Faith

A party may recover from an insurer for "damages occasioned by failure to settle within the policy limits if that failure is attributable to either bad faith or negligence." *Tyler v. Grange*

ORDER GRANTING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT REGARDING NEGLIGENCE CLAIM - 5

*Ins. Ass'n,* 473 P.2d 193, 198 (Wash. Ct. App. 1970).  This means, "the finder of the fact is entitled to find liability on the theory of either negligence or bad faith, independent of the other." *Id*.  "[T]he plaintiff is entitled to a jury verdict on theories of either negligence or bad faith *independent of each other* because a party may fail to use ordinary care yet still not act in bad faith." *First State Ins. Co. v. Kemper Nat. Ins. Co.*, 971 P.2d 953, 960 (Wash. Ct. App. 1999); *see also Schmidt v. Coogan*, 335 P.3d 424, 433 n.4 (Wash. 2014).

"Claims of insurer bad faith 'are analyzed applying the same principles as any other tort[.]'" *Mutual of Enumclaw Ins. Co. v. Dan Paulson Const., Inc.*, 169 P.3d 1, 8 (Wash. 2007) (quoting *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003)).  "'In order to establish bad faith, an insured is required to show the breach [of duty] was unreasonable, frivolous, or unfounded.'" *Id*. (quoting *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124 (Wash. 1998)).  For negligence, establishing the failure to use ordinary care is all that is necessary.  "If the insurance company fails to meet this standard (reasonably prudent man test), it is guilty of negligence in the performance of its contract and becomes liable[.]" *Tyler*, 473 P.2d at 198 (quoting *Ballard v. Ocean Acc. & Guarantee Co.*, 86 F.2d 449 (7th Cir. 1936)).

Defendant does not dispute the existence of a negligent claims handling cause of action. (Dkt. No. 93 at 1) ("Allstate acknowledges that Washington case law recognizes a claim for negligent claims handling.").

**C.  Plaintiff's Negligent Claims Handling Claim**

Plaintiff asserts "multiple violations of [Washington Administrative Code] 284-30-330 give rise as to whether [Defendant's] conduct breached the duty of ordinary care under the doctrine of Negligence under the common law."  (Dkt. No. 92 at 6.)

1. <u>Subsection (2) of Washington Administrative Code § 284-30-330</u>

Plaintiff argues "Allstate failed to act 'reasonably' under *Leahy*, where no explanation was given for Allstate's repeated denial of benefits without consultation with any medical professional." (*Id*. at 7.) Other than making a conclusory allegation, Plaintiff provides no analysis in support of this contention. As previously stated, it is not the task of a district court "to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d at 1279.

As to the pre-lawsuit UIM demand submitted in January of 2019, the Court previously concluded *Leahy v. State Farm Mut. Auto. Ins. Co.*, 418 P.3d 175 (Wash. Ct. App. 2018), is not applicable because the record reflects no dispute as to causation at the time the UIM demand was submitted. (*See* Dkt. No. 82 at 2–3.) Admittedly, *Leahy* analyzed the issue of causation in the context of a bad faith claim and not negligence. However, the Court is unaware of, and Plaintiff has not identified, any authority concluding the duty of ordinary care requires a claims adjuster to obtain the opinion of a medical expert when determining how much money to offer a claimant for general damages.

As to the "ER 408 Settlement Communication" submitted to Defendant and its attorney on January 22, 2021, less than 90 days before trial in the underlying UIM state court action, "settlement offers made by counsel during litigation are not claims investigations." *Lock v. Am. Fam. Ins. Co.*, 460 P.3d 683, 692 (Wash. Ct. App. 2020). Notwithstanding, Plaintiff appears to continue to assert the "ER 408 Settlement Communication" made during litigation was a "supplemental" UIM demand requiring Defendant to begin anew its claims investigations rather than evaluate the settlement communication in the context of the pending UIM litigation. Plaintiff, however, offers no authority to support this contention.

ORDER GRANTING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT REGARDING NEGLIGENCE CLAIM - 7

Accordingly, subsection (2) of Washington Administrative Code § 284-30-330 does not support Plaintiff's negligence claim.

2. Subsection (4) of Washington Administrative Code § 284-30-330

Plaintiff asserts "under subsection (4), Allstate failed to pay [Plaintiff's] claim without conducting a reasonable investigation into her medical condition and resulting damages." (Dkt. No. 92 at 7.) Plaintiff provided no analysis in support of this assertion.

As to the pre-lawsuit UIM demand submitted in January of 2019, it appears Defendant's claims adjuster did review the UIM demand letter, reviewed Plaintiff's medical records, had an understanding of Plaintiff's treatment history, and discussed the medical records and treatment history with Plaintiff's counsel. (Dkt. No. 51-1 at 59; 71-2 at 17.) The claims adjuster also informed Plaintiff's counsel that based on her review of the information provided, she did not agree with Plaintiff's valuation of the claim. (*Id*.) Plaintiff has not identified evidence indicating the claims adjuster never reviewed nor analyzed Plaintiff's January 2019 UIM demand. Thus, a reasonable juror could not find Defendant failed to conduct a "reasonable investigation into [Plaintiff's] medical condition and resulting damages" after Defendant received the January 2019 UIM demand.[2]

---

[2] The claims adjuster also appears to have utilized a program known as Colossus to assist in valuing the UIM claim. (Dkt. No. 71-2 at 15–16.) Plaintiff previously asserted Defendant's "method of valuation relied solely on a computer program known as 'Colossus', and did not involve engagement with any medical professional. (Dkt No. 71 at 1.) However, the deposition testimony Plaintiff previously cited did not indicate Defendant relied solely on a computer program to value the claim when the January 2019 UIM demand was submitted. (*See id*. at 3–4.) Moreover, Plaintiff offers no authority for the contention that the duty of ordinary care bars use of a computer program to assist in evaluating a claim.

As to the January 2021 "ER 408 Settlement Communication," again "settlement offers made by counsel during litigation are not claims investigations." *Lock*, 460 P.3d at 692. Actions related to this communication would not support a negligent claims handling claim.

      3.    <u>Subsection (7) of Washington Administrative Code § 284-30-330</u>

Plaintiff asserts under "subsection (7), [Defendant] compelled [Plaintiff] to initiate litigation to recover benefits where [Defendant] made no offer and provided no explanation of its valuation of [Plaintiff's] multiple demands[.]" (Dkt. No. 92 at 7.) Once more, Plaintiff offered no further analysis other than the conclusory allegation.

A dispute between parties as to the value of a claimant's general damages is insufficient to establish a violation of subsection (7). As previously pointed out, the argument that a "pre-suit offer of $0" automatically supports a violation of subsection (7) was rejected in *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 389 P.3d 476, 480 (Wash. 2017). There must be something other than disparity between the party's valuation of a claim to support a violation of subsection (7). (*Id.* at 483) ("[I]t is not necessarily inconsistent for an insurer to pay [personal injury protection coverage] and balk at [paying UIM coverage] based on its valuation of the claim.").

Thus, as to the January 2019 UIM demand, the UIM valuation dispute between Plaintiff and Defendant is insufficient to support a violation of subsection (7). It, therefore, does not support Plaintiff's negligence claim.

As to the January 2021 "ER 408 Settlement Communication," once more, "settlement offers made by counsel during litigation are not claims investigations." *Lock*, 460 P.3d at 692. Actions related to this communication would not support a negligent claims handling claim.

      4.    <u>Subsection (13) of Washington Administrative Code § 284-30-330</u>

ORDER GRANTING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT REGARDING NEGLIGENCE CLAIM - 9

1    Plaintiff asserts under "subsection (13), [Defendant] failed to 'promptly provide a
2 reasonable explanation' of the basis for denial of the claim 'in relation to the facts and applicable
3 law.'" (Dkt. No. 92 at 7.) As with the prior three subsections, Plaintiff offered no further
4 analysis other than the conclusory allegation.

5    As to the January 2019 UIM Demand, the record indicates Defendant did in fact respond
6 to Plaintiff and did explain the basis for its belief the UIM claim was not valued more than the
7 amount Plaintiff received from the underlying tortfeasor. *See* discussion at Section III.C.2.,
8 *supra*. Plaintiff provides no authority to conclude Defendant's explanation through a telephone
9 call violated the duty of ordinary care.

10   And, as already explained, the January 2021 "ER 408 Settlement Communication" does
11 not support Plaintiff's negligence claim.

12   Having analyzed each section of Washington Administrative Code § 284-30-330 Plaintiff
13 cites as support for Plaintiff's negligence claim, the Court finds and concludes there are no
14 disputes of material fact and Defendant is entitled to judgment as a matter of law on this claim.

15   **D.  Exercise of Supplemental Jurisdiction**

16   The remaining claim is breach of contract for which the maximum recovery is $50,000.
17 This means the amount in controversy supporting diversity jurisdiction no longer exists.
18 Whether to continue to exercise supplemental jurisdiction is discretionary based on values of
19 economy, convenience, fairness, and comity:

> The Supreme Court has stated, and we have often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.' While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in [28 U.S.C.] § 1367(c), it is informed by the . . . values of 'economy, convenience, fairness, and comity.' Given the importance of these values in our federal system,

ORDER GRANTING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT REGARDING
NEGLIGENCE CLAIM - 10

> the proper administration of justice is far better served by the deliberative decision than by default.

*Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (citations omitted).

Regarding economy, the underlying UIM breach of contract claim was filed in April of 2019 for an injury that occurred in March of 2016. Prior to removal to this Court, numerous trial continuances occurred. On the eve of trial in state court, Plaintiff moved to voluntary dismiss asserting Plaintiff was not prepared to go to trial. Notwithstanding, an additional continuance was allowed after the pleadings were amended. After removal, and because the parties had not complied with the local pretrial procedures, the trial date again was continued. Given the length of time the breach of contract claim has been pending, judicial economy weighs in favor of keeping the current trial date and avoiding delay, and weighs against imposing the use of additional state court judicial resources.

Regarding convenience, this Court believes it is convenient to continue to exercise supplemental jurisdiction over the remaining claim. The Court is as aware of the nature of the remaining claim as the state courts. The parties also are intimately aware of the facts of this case and the long procedural history involved. Presumably, it is most convenient for the parties to try the remaining claim sooner rather than later.

Regarding fairness, it is most fair to both parties to bring closure to the UIM breach of contract claim as it has been pending for an extensive period. It would be unfair to the parties, the potential witnesses, and the state judiciary to restart the litigation in state court in light of the procedural history of this case.

Likewise, comity between the federal judiciary and the state judiciary is best served by this Court maintaining supplemental jurisdiction rather than having the dispute presented to a jury at some distant date in the future.

ORDER GRANTING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT REGARDING NEGLIGENCE CLAIM - 11

Accordingly, the Court will continue to exercise supplemental jurisdiction as to the remaining UIM breach of contract claim.

### IV. CONCLUSION

Having considered Defendant's motion, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Defendant's Partial Motion for Summary Judgment and Dismissal of Negligence Claim (Dkt. No. 91) is GRANTED.

1. Judgment is GRANTED in favor of Defendant as to Plaintiff's negligence claim. Such claim is DISMISSED WITH PREJUDICE.

2. The Court will continue to exercise supplemental jurisdiction over the remaining UIM breach of contract claim.

3. Trial remains scheduled for September 12, 2022, with a Pretrial Conference scheduled for September 2, 2022 at 10:00 a.m.

4. Proposed Pretrial Order, Trial Briefs, Proposed Voir Dire, Jury Instructions, Neutral Statement of the Case, and Deposition Designations are due by August 22, 2022.  The parties SHALL comply with the applicable federal and local rules in submitting pretrial documents to the Court.  The Parties are further directed to contact the Court Room Deputy for questions regarding the submission of proposed exhibits for trial.

Dated this 22nd day of July 2022.



David G. Estudillo
United States District Judge